UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D. MCCLURG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:12CV00361 AGF |
| | ) | |
| MI HOLDINGS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____   Consolidated for Discovery
And Pretrial Proceedings with

| | | |
|---|---|---|
| PAULETTE M. ADAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:12CV00641 AGF |
| | ) | |
| MI HOLDINGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs in these two actions seek damages under the Price Anderson Act as amended in 1988, 42 U.S.C. § 2210, et seq. ("PAA"), and various state law tort theories, for personal injuries and emotional distress they sustained as a result of multiple decades of exposure to hazardous, toxic, and radioactive substances handled by Defendants from 1943 to 1973 in the environs of North St. Louis County, Missouri.   One action currently

involves 13 Plaintiffs and eight Defendants; the other action currently involves 16 Plaintiffs and the same eight Defendants.

Now before the Court in each case are three motions to dismiss the complaint for failure to state a claim, and one motion to dismiss for failure to state a claim and for lack of personal jurisdiction. The motions to dismiss for failure to state a claim were filed by Defendants DJR Holdings, Inc., and Jarboe Realty and Investment Company, Inc. (jointly "the Jarboe Defendants") (Doc. No. 39 in *McClurg*; Doc. No. 51 in *Adams*); Defendants Covidien, Inc., MI Holdings, Inc., and Mallinckrodt, Inc., (Doc. No. 63 in *McClurg*; Doc. No. 34 in *Adams*); and Defendant Cotter Corp. ("Cotter") (Doc. No. 72 in *McClurg*; Doc. No. 42 in *Adams*). The motions to dismiss for failure to state a claim and for lack of personal jurisdiction were filed by Defendants Associates First Capital Corp. ("AFC") and Citigroup, Inc. (Doc. No. 98 in *McClurg*; Doc. No. 68 in *Adams*).

Also before the Court are Defendants' requests that the Court enter a Case Management Order patterned after *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Nov. 18, 1986), that would require Plaintiffs to define their injuries with precision and to produce some evidence of causation prior to any discovery taking place. For the reasons set forth below, AFC and Citigroup's motion to dismiss for lack of personal jurisdiction shall be granted. The remaining motions to dismiss shall all be granted with respect to Plaintiffs' state law claims, while Plaintiffs' request for the right to file amended complaints will be granted with respect to their claims under the PAA. These motion to dismiss will be denied at this point with respect to Plaintiffs' claims under

2

the PAA, without prejudice to filing new motions to dismiss addressed to any amended complaints filed by Plaintiffs. Should Plaintiffs fail to file amended complaints within the time allowed, these actions will be dismissed. Defendants' request for a *Lone Pine* Order shall be denied as moot at this point, also without prejudice to reasserting such a request after any amended complaints are filed.

## BACKGROUND

The two complaints are virtually identical with respect to the alleged relevant conduct of Defendants or their predecessors in interest, and the theories of liability. Plaintiffs allege that from 1942 to 1957, under contract with the United States Army in connection with the Manhattan Project, and later under contract with the Atomic Energy Commission, Mallinckrodt Chemical Works processed natural uranium into various uranium compounds at a facility in downtown St. Louis, Missouri, designated as the St. Louis Downtown Site (the "SLDS"). When the SLDS ran out of space to store the radioactive residues from the production process, a 21.7-acre tract of land, designated as the St. Louis Airport Site (the "SLAPS") in north St. Louis County, Missouri, was procured to store the residues. By 1960, there were approximately 50,000 empty drums and approximately 3,500 tons of miscellaneous contaminated steel and alloy scrap stored onsite at the SLAPS. The SLAPS and adjacent properties became contaminated with radioactive substances as a result.

During the 1960's, private companies purchased the radioactive residues being stored at the SLAPS and began hauling them to a site on Latty Avenue in Berkeley,

Missouri, in north St. Louis County.  Part of this site later became the Hazelwood Interim Storage Site ("HISS").  From there, the residues were sold for their commercial value and shipped to various other destinations.  Transport and migration of the radioactive residues to and from the SLDS, the SLAPS, and the HISS also spread radioactive substances along haul routes to nearby Vicinity Properties ("VPs").

The SLAPS VPs consist of approximately 78 recreational and residential properties, including properties along Coldwater Creek.  The federal government added the SLDS, the SLAPS, the HISS, and the VPs to the Formerly Utilized Sites Remedial Action Program ("FUSRAP"), an environmental remediation program that addresses radiological contamination generated by development of atomic weapons in the 1940s and 1950s.

The complaints further allege that from 1962 through 1966, Contemporary Metals Corporation ("CMC") removed approximately 125,000 tons of radioactive residues from the St. Louis facilities to its Hazelwood, Missouri, facility.  Continental Mining & Milling Co. ("CMMC") removed uranium-bearing residues from the SLDS and transported the residues to the HISS to extract by-products for resale.  In 1966, CMMC was authorized to possess 125,000 tons of uranium and thorium, a portion of which was moved to the processing site at Latty Avenue.  Between 1966 and 1969, Commercial Discount Corporation ("CDC"), CMMC's successor, stored and dried uranium and thorium material before shipping it to Cotter in Colorado.  In December 1969, Cotter purchased the remaining residues at Latty Avenue and dried and shipped them to Colorado at a rate of approximately 400 tons per day.

Paragraph 55 of each complaint alleges as follows: "Upon information and belief, the SLAPS and the Latty Avenue VPs, including impacted areas along Coldwater Creek, were contaminated with radium, thorium and uranium.  Investigations have determined that contamination levels at the North St. Louis County Sites exceed federal dose limits."

The complaints assert that MI Holdings, Inc., and Mallinckrodt, Inc., are the successors in interest to Mallinckrodt Chemical Works.  AFC is sued individually and as successor-in-interest to CMC, CMMC, and CDC.  The complaints allege that AFC acquired CDC in 1975 and that the "merger between AFC and CDC resulted in formation of The Associates Corporation."  Citigroup, Inc., is sued individually and as successor-in-interest to The Associates Corporation, that it allegedly acquired in 2000. The complaints allege that the two remaining Defendants, that is, the Jarboe Defendants, purchased the Latty Avenue site in June 1977, and are the current owners of the HISS, the Future Coatings Site (used for manufacturing plastic coatings), and several Latty Avenue VPs, all of which have elevated levels of residual uranium and thorium.  Plaintiffs maintain that as the current property owners, the Jarboe Defendants are responsible for the nuclear contamination that allegedly continues to spread throughout nearby communities.

The complaints assert in general terms that "Defendants in this action have, at times material to this action, conducted various activities involving nuclear materials," "are therefore engaged in the development, use and control of atomic energy within the meaning of the Atomic Energy Act, 42 U.S.C. § 2011 et seq.," "[a] consequence of these activities is the requirement that Defendants obtain a federal license authorizing their

5

operations involving nuclear materials," and "Defendants or their predecessors and/or agents have at all relevant times held such federal licenses."

Plaintiffs in each complaint allege that, as a direct result of Defendants' reckless, negligent, and/or grossly negligent conduct, Plaintiffs were exposed to radioactive substances that were released by Defendants into the environment, including the air, water, and soil, in and around his/her residence in north St. Louis County, Missouri, and that this exposure caused various forms of cancer, with some Plaintiffs having died as a result. Plaintiffs allege that they engaged in different activities in or near Coldwater Creek, including attending school in the area, participating in outdoor and recreational activities, or having had their basements flooded by the creek.

Count One of the complaints is brought as a "public liability action" under the PAA. Counts Two through Eight assert state law claims for negligence, negligence per se, strict liability, intentional infliction of emotional distress, reckless infliction of emotional distress, negligent infliction of emotional distress, and "Medical Monitoring," respectively.   In a single request for damages covering all Counts, Plaintiffs seek damages in unspecified amounts for medical expenses they incurred, lost earnings, pain and suffering, and emotional distress.   They also seek punitive damages and attorney's fees. The purported basis for federal jurisdiction asserted in the complaints is the PAA.

## ARGUMENTS OF THE PARTIES

The parties' arguments in support and against the motions to dismiss are virtually the same in both cases.   And all Defendants' arguments raise similar points, including that

Plaintiffs' claims are governed exclusively by the PAA, with the standard of care set by federal radiation dose standards in place at the relevant time.  Accordingly, they argue, Plaintiffs' complaints fail to meet pleading requirements by failing adequately to allege exposure to radiation doses in excess of those levels.

More specifically, the Jarboe Defendants argue that because the complaints fail to allege that the Jarboe Defendants are engaged in the nuclear energy industry and thus subject to the federal nuclear safety regulations promulgated by the Nuclear Regulatory Commission ("NRC"), the complaints fail to show that Plaintiffs are entitled to any relief under the PAA against the Jarboe Defendants.

Plaintiffs respond that to be a proper defendant in a public liability action under the PAA, one is not required to be engaged in the nuclear energy industry, be an NRC licensee, or be subject to the federal nuclear safety requirements established by the NRC.  Rather, the PAA creates a federal cause of action for torts arising out of nuclear incidents. Plaintiffs argue that the "PAA mandates that the federal claim must be derived from state law.  42 U.S.C. § 2014(hh).[1]  Therefore, . . . Defendants are subject to liability pursuant to the PAA under state tort theories in the same manner and to the same extent that they

---

1   Section § 2014(hh) provides as follows:

> The term "public liability action," as used in section 2210 of this title, means any suit asserting public liability.  A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.

would be subject to liability directly under state law were this case a nonnuclear toxic tort." (Doc. No. 69 at 3.)[2]

Cotter also argues that Plaintiffs have failed to satisfy the pleading requirements for a public liability action under the PAA, and that the complaints are subject to dismissal because they contain no factual allegations of when, where, or how each Plaintiff's exposures occurred; no allegations identifying the federal permissible dose limits applicable to each Plaintiff's claims; and no allegations regarding the radiation dose received by each Plaintiff. In addition, Cotter argues for dismissal based upon the five-year statute of limitations applicable to a PAA claim in Missouri.

In response to Cotter's motion to dismiss, Plaintiffs again maintain that the PAA incorporates state standards of care, and thus Count I is not governed by a federal standard of care. They argue that dismissing the state law counts would have little effect because "if the state law causes of action are preempted, they are nonetheless subsumed in Count I unless they are inconsistent with § 2210. Section 2210 deals primarily with insurance and indemnification and is not inconsistent with Plaintiffs' state causes of action." (Doc. No. 83 at 4.) Plaintiffs also maintain that the allegations in the complaints raise plausible claims that "Defendant violated state standards of care and federal regulations and that Plaintiffs were exposed to radiation in excess of federal dose limits."

---

2  Except where otherwise specified, "Doc. No." references refer to docket entries in *McClurg*.

On the statute of limitations question, Plaintiffs argue that it is not clear that Missouri's five-year limitations period for personal injuries action applies, that their claims accrued when they knew or reasonably should have known both the existence and cause of their injuries, that when a claim under the PAA accrues is a matter of federal law, and that a statute of limitations defense should not be resolved on a pre-answer motion to dismiss.

Mallinckrodt LLC, MI Holdings, Inc., and Covidien, Inc., argue that the complaints are based on conclusory allegations globally asserted against all Defendants and, as such, fail to state a claim under Federal Rule of Civil Procedure 8.   While the complaints contain many allegations about various activities at the sites in question, there are virtually no allegations concerning which defendant committed which actions or which defendant is allegedly involved at each location.   These Defendants argue that the complaints are especially deficient with respect to Covidien, Inc., because the complaints fail to allege any wrongful act by Covidien, Inc.   Furthermore,

> Plaintiffs do not claim exposure to the alleged contamination at the SLDS. Instead, Plaintiffs allege injury based solely on exposure to contamination at separate sites, SLAPS and other North St. Louis County Sites, which have allegedly contaminated Coldwater Creek.   Accordingly, while Plaintiffs have alleged the Mallinckrodt defendants' involvement at the SLDS, they have made no allegations that link the Mallinckrodt defendants' alleged involvement at the SLDS site to Plaintiffs' exposure or injuries.

(Doc. No. 64 at 9.)

Plaintiffs respond that it is not their burden at the pleading stage to specify each Defendant's role in the activities that resulted in Plaintiffs' injuries, especially where the allegations concern activities that were often performed secretly.   Rather, Plaintiffs'

9

allegations are sufficient to survive a motion to dismiss because it is possible that, through discovery, Plaintiffs will uncover more specific facts to substantiate their claims, and the present complaints are sufficient to apprise Defendants of the claims against them and to enable Defendants to respond.  Plaintiffs argue that "there is nothing in [Rule 8] that nothing requires them to plead facts that, if true, establish each element of a cause of action," as long as the allegations inform Defendants of the gravamen of the complaints, which they contend the complaints here do.

Plaintiffs also assert that they are not required to plead allegations sufficient to establish causation; "rather, causation is a fact-intensive inquiry that is normally resolved by a jury."  They argue that the "allegations with respect to causation provide a reasonable inference that, but for Defendants' conduct, Plaintiffs would not have suffered injuries to their persons . . . ."  With respect to Covidien, Inc., Plaintiffs state that they should be permitted to amend the Complaint to include allegations of successor liability to establish Covidien, Inc.'s liability for Plaintiffs' claims, as it is undisputed that Covidien, Inc. is an affiliate of Mallinckrodt, Inc.

Lastly, Plaintiffs request, in general, that if the Court finds the pleadings insufficient, Plaintiffs be granted leave to amend the complaints, in the interests of justice. They maintain that "[a]llowing any potentially culpable Defendant dismissal from this action because of pleading deficiencies would confound the interests of justice."

AFC (a Delaware corporation with its principle place of business in Maryland) and Citigroup, Inc. (a Delaware corporation with its principle place of business in New York)

contend that this Court lacks personal jurisdiction over them, as they have no significant contacts with Missouri, and liability against them cannot be predicated on the acts of their past and present separately incorporated subsidiaries.  In support of this argument, Citigroup, Inc. has submitted the declaration of a corporate officer that AFC is an indirect wholly owned subsidiary of Citigroup, Inc.  And AFC has submitted the declaration of a corporate officer that from 1975, when AFC acquired CDC, until 1993, CDC remained a wholly owned subsidiary of AFC; and that in 1993, CDC and other companies merged into a company that eventually dissolved in 2007.

AFC and Citigroup, Inc. also adopt some of the other Defendants' arguments for dismissal on the complaint, including that Plaintiffs' PAA causes of action (Count I) fails because federal regulations regarding permissible exposure limits preempt state actions; Plaintiffs' causes of action based directly on state law (Counts Two through Eight) are preempted because they are inconsistent with the PAA; the complaint does not satisfy the pleading requirements of Rule 8; actions under the PAA lie only against NRC licensees and that they are not NRC licensees; and Plaintiffs' claims are time barred.

Plaintiffs respond that the complaints do not seek to impose liability on AFC and Citigroup, Inc., as parent companies for the acts of their subsidiaries, but rather as successors in interest to entities that in the 1960s operated at some of the sites described in the complaint.  Plaintiffs do not counter AFC's and Citigroup's declarations, and acknowledge that the Court may consider the declarations with respect to the personal jurisdiction issue.

In addressing AFC's and Citigroup, Inc.'s other arguments for dismissal, Plaintiffs reassert by incorporation their arguments in response to Cotter's motion to dismiss. Plaintiffs elaborate on their position that in enacting the 1988 amendments to the PAA, Congress did not occupy the field of nuclear safety to the exclusion of state law standards of care, including state law strict liability standards, and that § 2014(hh), by not specifically stating that the 1988 amendments preempt state standards of care, establishes that Congress chose not to limit compensatory damages in any circumstances, even where a defendant had complied with federal radiation exposure limits.

## **DISCUSSION**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'"  *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

The PAA as amended in 1988, establishes a federal cause of action known as a "public liability action" for tort claims arising out of incidents involving radioactive materials.  A "public liability action" means a "suit asserting public liability."  42 U.S.C. § 2014(hh).  "Public liability" means "any legal liability arising out of or resulting from a

12

nuclear incident." *Id*. § 2014(w).  A "nuclear incident" involves "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property" caused by the "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material."  *Id*. § 2014(q).

"To summarize, a 'public liability action' is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, or property damage." *Cotroneo v. Shaw Env't & Infrastructure, Inc*., 639 F.3d 186, 194 (5th Cir. 2011).  "[A] plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the PAA, 42 U.S.C. § 2014(q), can sue under the PAA or not at all."  *Id*. at 193 (citation omitted). Here, Plaintiffs acknowledge that their state claims are redundant.  Accordingly, all four motions to dismiss will be granted with respect to Counts Two through Eight.  *See Adkins v. Chevron Corp*., No. 2:11-CV-173, 2012 WL 6680366, at *5-6 (E.D. Tenn. Dec. 21, 2012) (dismissing state law counts in a class action for damages under the PAA and state tort law based on radiation releases at a nuclear fuel processing facility in Tennessee between 1957 and 2010, holding that the PAA completely preempted state law causes of action such as strict liability, wrongful death, and negligent infliction of emotional distress; citing cases).

This does not resolve the question of what standard of care applies to Count One, the claim under the PAA, and hence, what elements must be plead for this claim to survive dismissal.  As noted above, § 2014(hh) provides as follows:

13

> The term "public liability action," as used in section 2210 of this title, means any suit asserting public liability. A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.

Plaintiffs contend that state law rules for decision apply in federal public liability actions under the PAA unless those state law rules for decision are inconsistent with section § 2210 of the PAA, which deals with insurance and indemnification. Defendants argue that state law rules for decision apply in public liability actions unless those state law rules for decision are inconsistent with the PAA as a whole. The Eighth Circuit Court of Appeals has not yet considered this issue, but every Circuit Court that has, the Third, Sixth, Seventh, Ninth, Tenth, and Eleventh, have concluded that the maximum permissible radiation dose levels set by federal safety standards establish the duty of care for radiation injuries, and that imposing a non-federal duty would conflict with federal law. *See Adkins*, at *7-8 & n.3 & 4 (citing cases including, e.g., *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010)).

Plaintiffs, who have provided no contrary Circuit Court decisions, are correct that cases from Circuits other than the Eighth Circuit are not binding on this Court. This Court, however, agrees with the reasoning of those courts that have considered the matter, and will follow the clear majority opinion on the issue.

District court opinions overwhelmingly hold that an essential element of a public liability action is that each plaintiff's exposure exceeded the federal dose limits. *Id*. at

14

*9-10 (citing cases, and dismissing the plaintiffs' PAA claims on the ground that the first amended and proposed second amended complaints' conclusory allegations of the defendants' non-compliance with various "applicable federal, state, and local laws," and reference to a number of federal regulations, were insufficient to survive a motion to dismiss those claims).

Here, rather than dismiss Plaintiffs' claims based on this authority, the Court will grant Plaintiffs' alternative request for an opportunity to file an amended complaint that adequately pleads a cause of action under the PAA, in accordance with the above rulings. The Court further concludes that Missouri's five-year statute of limitations for personal injury actions, Mo. Rev. Stat. § 516.120(4), applies to Plaintiffs' PAA claims, *see, e.g., Corcoran v. NY Power Auth.*, 202 F.3d 530, 542 (2nd Cir. 1999), and Defendants will be free to reassert a statute of limitations argument addressed to any amended complaints that are filed.

The Court will grant the motion to dismiss filed by AFC and Citigroup, Inc., for lack of personal jurisdiction, as Plaintiffs have not countered these parties' persuasive arguments and evidence that indeed, the Court lacks personal jurisdiction over them; nor have Plaintiffs sought leave to replead jurisdictional facts with respect to AFC and Citigroup, Inc., or suggested that such facts exist.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants AFC and Citigroup, Inc.'s motions to dismiss these actions against them for lack of personal jurisdiction are **GRANTED**. (Doc. No. 98 in *McClurg v. MI Holdings, et al.*, No. 4:12CV00361 AGF; and Doc. No. 68 in *Adams v. MI Holdings, Inc.*, No. 4:12CV00641 AGF.)

**IT IS FURTHUR ORDERED** that Plaintiff shall have up to and including **May 10, 2013**, to file amended complaints that sufficiently plead a cause of action under the PAA. Failure to do so will result in dismissal of these actions.

**IT IS FURTHER ORDERED** that the remaining Defendants' motions to dismiss shall be **GRANTED** with respect to Counts Two through Eight of the complaints in these actions, and **DENIED** with respect to Count I **without prejudice** to file a new motion to dismiss addressed to any amended complaints filed by Plaintiffs. (Doc. Nos. 39, 63, and 72 in *McClurg v. MI Holdings, et al.*, No. 4:12CV00361; and Doc. Nos. 51, 34, and 42 in *Adams v. MI Holdings, et al.*, No. 4:12CV00641.)

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2013.